NOT DESIGNATED FOR PUBLICATION

No. 124,232

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAAC NATHANIEL VANO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court, ROBERT W. FAIRCHILD, judge. Opinion filed February 3, 2023. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant, and *Isaac N. Vano*, appellant pro se.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM: Isaac N. Vano appeals his jury conviction of one count of aggravated battery and one count of aggravated assault. Although he raises multiple issues, we find no error and affirm his convictions and sentence.

*Factual and Procedural Background*

Around 8:30 p.m. on May 15, 2018, Vano arrived at his parents' house and noticed a person, later revealed to be 27-year-old Addison Roberts, standing in their driveway, looking into the cars. On the 911 call played at trial, Vano said Roberts was "acting weird" and "might be on drugs."

Roberts suffers from Huntington's Disease—a neurological disorder that impacts a person's cognitive abilities. Individuals with Huntington's Disease can have coordination issues and stilted speech, which may make it appear the person is under the influence of drugs. Roberts, who lived nearby with his mother, had recently been wandering from his home and occupying the yards and porches of neighbors or walking to a nearby McDonald's.

Seeing the person, Vano jumped out of his vehicle, drew his firearm, and yelled at him, "Hey, what are you doing in my yard?" Roberts fled and Vano took chase, running through his parents' backyard, jumping over a fence, and running into the front yard of a neighbor where Vano caught up with him. There, near the sidewalk, Vano held Roberts at gunpoint and called 911.

While Vano was speaking with the 911 operator, Roberts tried to flee. Vano said: "I was holding my gun with one hand and my phone with the other and I grabbed him by the shirt and then the gun went off and hit him." Vano tried to grab Roberts with his hand that held his firearm. Vano shot Roberts in the back of the head. While being taken to the police station, Vano told the law enforcement officer, "I was holding the gun . . . and I accidently pulled the trigger. I didn't mean to shoot him."

After nine weeks in the hospital and another 15 weeks in rehabilitation hospitals, Roberts survived the gunshot to his head. But he was unable to testify at trial because he has no recollection of the events.

The State charged Vano with one count each of aggravated assault and aggravated battery. A jury convicted him as charged and the district court sentenced Vano to a controlling sentence of 32 months' imprisonment.

Vano appeals, arguing that the district court erred by not giving the jury a multiple acts instruction and by denying Vano's motion for a bill of particulars. Vano also filed a supplemental pro se brief raising seven more issues. We address all these issues below.

*Did the District Court Err in Failing to Give an Unanimity Instruction?*

First, Vano argues the district court clearly erred by failing to instruct the jury on multiple acts, also known as a unanimity instruction, for his aggravated assault charge. He contends the State presented three separate acts that the jury could have found amounted to aggravated assault:

1. drawing his firearm in the driveway;
2. chasing Roberts through the backyard and into the neighbor's yard; and
3. holding Roberts at gunpoint in front of the neighbor's house.

Without such an instruction, he asserts, it was impossible for jurors to agree on a single underlying act.

The State counters that a multiple acts instruction was not factually appropriate because the facts show only one continuous act. The State adds that any error was

harmless because it argued to the jury one act supporting aggravated assault—Vano's initial drawing of his firearm which placed Roberts in such fear that he ran away.

Generally, we review jury instruction errors by asking whether the party preserved the issue, whether the jury instruction is legally and factually appropriate, and whether any error requires reversal. See *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). Yet the Kansas Supreme Court has developed a more particularized test to use when, as here, a defendant challenges a district court's failure to give a unanimity jury instruction in a case potentially involving multiple acts. See *State v. Harris*, 310 Kan. 1026, 1039, 453 P.3d 1172 (2019). First, we determine whether the case involves multiple acts. Second, if the case does involve multiple acts, we consider whether an error occurred because the district court failed to give a unanimity instruction and the State failed to elect which act it was relying on. Third, if there was an error, we decide whether it requires reversal. 310 Kan. at 1039. We apply this more particularized test here.

Under the first step, we decide "'whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary.'" 310 Kan. at 1039. In Kansas, "'acts are multiple acts if they are factually separate and distinct.'" *State v. Moyer*, 306 Kan. 342, 360, 410 P.3d 71 (2017). On the other hand, incidents are factually separate when either independent criminal acts have occurred at different times or when a fresh impulse motivated a later criminal act. 306 Kan. at 360. We consider these factors when determining whether conduct is unitary (i.e., the "same conduct") rather than separate:

- whether the acts occurred at or near the same time;
- whether the acts occurred at the same location;
- whether an intervening event occurred between the acts; and
- whether a fresh impulse motivated some acts.

4

310 Kan. at 1039.

As to the first two factors, time and location of the events, Vano is correct that technically three acts occurred, but this interpretation places too narrow a lens on each act. Rather, Vano's behavior was a single course of conduct uninterrupted in time—the acts occurred at or near the same time, within a matter of minutes. And all acts were closely linked causally—pulling the firearm, chasing Roberts, and catching him in the neighbor's yard—flowing without a break from one act to the next. And while the location changed from Vano's parents' front yard to the neighbor's front yard, the two locations were the natural result of Vano's choice to chase Roberts.

For the third factor, an intervening event, the entire conduct here occurred within the context of Vano's attempting to apprehend a trespasser. The record does not show any intervening event which divorced one act from another. See *State v. Livengood*, No. 123,267, 2022 WL 1278760, at *7 (Kan. App. 2022) (unpublished opinion).

Finally, as for the fourth factor—a fresh impulse—no fresh impulse is shown between Vano's initial pulling of the firearm on Roberts, the chase, and the interaction in the neighbor's front lawn. The record shows that all three acts were born of and flowed from the same impulse—trying to catch an alleged trespasser on Vano's parents' property. By Vano's own argument, these events stemmed from one impulse. Each of the factors points toward unitary conduct, not three separate acts.

This reasoning and result are consistent with similar cases. In *Livengood*, 2022 WL 1278760, at *6-8, another panel of this court considered whether to reverse a conviction because the court gave no unanimity instruction. There, the victim had a protective order against Livengood. After the order was granted, Livengood attended the graduation of the victim's adult daughter, at which he "called out" to the daughter. When the mother and daughter arrived at their vehicle after the ceremony they found a winky

5

face drawn on their car, which they recognized as Livengood's "signature." The panel held that Livengood was not entitled to a multiple acts instruction because his behavior was "one overall act comprised of three closely connected components: his arrival at the graduation, coupled with his personal contact with [the daughter] during the ceremony, and his decision to leave his signature image on [the victim]'s car to alert the family to his presence." 2022 WL 1278760, at *7. Compare *Harris*, 310 Kan. at 1040 (finding no multiple acts for kidnapping charge when Harris confined his victim to her apartment for two hours and repeatedly forced her to move from room to room while demanding money), with *State v. King*, 297 Kan. 955, 982, 305 P.3d 641 (2013) (finding multiple acts when defendant intentionally rammed into parked vehicles, left, then returned 5-10 minutes later and may have damaged some vehicles then).

Because the facts show unitary conduct rather than multiple acts, a multiple acts instruction would not have been appropriate. So we find no error in the district court's failure to give the unrequested unanimity or multiple acts instruction.

*Did the District Court Abuse its Discretion by Denying Vano's Motion for a Bill of Particulars?*

Vano next argues that the district court abused its discretion by denying Vano's motion for a bill of particulars on the aggravated assault charge, arguing that the district court's denial hampered his ability to prepare his defense. The State counters that the charging document, the preliminary hearing, and the State's election by its arguments at trial sufficiently informed Vano of the State's focus. See *State v. Moyer*, 306 Kan. 342, 361, 410 P.3d 71 (2017) (citing *State v. Dickson*, 275 Kan. 683, 696, 69 P.3d 549 [2003]) (considering prosecutor's statements made during opening and closing arguments confirming single incident as "functional equivalent" of election by State).

We review the denial of a motion for a bill of particulars for an abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 533, 285 P.3d 361 (2012). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). As the party asserting error, Vano bears the burden of showing the court abused its discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

A charging document must contain "a plain and concise written statement of the essential facts constituting the crime charged." K.S.A. 22-3201(b). A charging document is generally sufficient if it is "drawn in the language of the statute." K.S.A. 22-3201(b). But when a charging document fails to specify the particulars of a charged crime sufficiently to enable the defendant to prepare a defense, K.S.A. 22-3201(f) allows the defendant to move for a bill of particulars. If the court grants that motion, "[a]t the trial the state's evidence shall be confined to the particulars of the bill." K.S.A. 22-3201(f).

A bill of particulars has two functions:  "'(1) to inform the defendant of the nature of the charges and the evidence to enable him to prepare a defense, and (2) to prevent further prosecution for the same offense.'" *Rojas-Marceleno*, 295 Kan. at 534 (quoting *State v. Myatt*, 237 Kan. 17, 29, 697 P.2d 836 [1985]); see also *State v. Wright*, 259 Kan. 117, 126, 911 P.2d 166 (1996) ("The object or purpose of the bill of particulars . . . is to supplement a sufficient indictment with more specificity of detail to better understand the nature of the charges, and its effect is to limit the evidence to the transactions set out in the response to the bill of particulars.").

As to the aggravated assault charge, the State's charging document broadly alleged:

7

"That on or about May 15, 2018, in the County of Johnson and State of Kansas, Isaac Nathaniel Vano did then and there unlawfully, feloniously and knowingly place another person, to-wit: A.J.R., in reasonable apprehension of immediate bodily harm with a deadly weapon, a severity level 7 person felony, in violation of K.S.A. 21-5412(b), K.S.A. 21-6804 and K.S.A. 21-6807. (aggravated assault)"

See K.S.A. 21-5412 (defining aggravated assault as "knowingly placing another person in reasonable apprehension of immediate bodily harm . . . [w]ith a deadly weapon."

Vano's motion for a bill of particulars claimed that even though the complaint reflected the statute's language, a bill of particulars was essential to the proper preparation of his defense. At the motions hearing, Vano argued he needed to know what the State's theory was for the aggravated assault and whether that assault happened continuously or at more than one place. The State responded that no bill of particulars was necessary because a preliminary hearing had been held and that: "The [aggravated] assault occurred when he got out of the car and drew it out on the kid in the driveway and chased him in two backyards and held him at gunpoint."

Ultimately, the district court judge denied Vano's motion, holding that the State had given Vano all the evidence at the preliminary hearing:

"[I]f you have a preliminary hearing and you've been given all of the evidence, you know they may—they're permitted to argue to the jury that, okay, this fact, this fact, and this fact all constitute this. And I think they can change. They're not going to be bound by one thing. Now, [the State] stated what their general position is, but I don't think they're required to do anything other than that."

This ruling reflects our law that a defendant has no need for a bill of particulars "[w]hen charges in the information are clarified by facts brought out at the preliminary hearing . . . absent a showing of surprise or prejudice." *State v. Robinson*, 229 Kan. 301, Syl. ¶ 6, 624 P.2d 964 (1981). Vano shows no surprise or prejudice here.

8

Vano's assertion also fails on the defense he presented at trial. He argues that he needed a bill of particulars to prepare his defense, but his defense focused on the very same conduct as did the State—Roberts' running away from Vano's firearm. As discussed above, the State's theory was that Vano committed the aggravated assault by pulling his firearm on Roberts in the driveway, causing Roberts to flee in fear. And Vano's defense was that Roberts ran because of his guilt from trespassing and not because of fear of Vano's firearm. So both the State and the defense focused on Roberts' flight—the State argued it showed fear and Vano argued it showed guilt. Vano's theory of defense at trial shows he understood which acts the State alleged constituted aggravated assault. As a result, the district court did not abuse its discretion by denying Vano's motion for a bill of particulars.

*Were Vano's Constitutional Rights Violated by Admitting Video Evidence?*

In his first pro se issue on appeal, Vano argues that his video interview at the booking facility should not have been admitted at trial because he "had not been advised of [his] rights, per *Miranda*," and he "invoked [his] 6th [A]mendment right to counsel." The State responds that Vano waived any claim of error about the admission of the video evidence by stipulating to its admission at trial. In the alternative, the State argues that there were no violations of Vano's Fifth Amendment, Sixth Amendment, or due process constitutional rights.

Pretrial, Vano had moved to suppress "all statements made by and elicited from the Defendant while in custody." But after the State responded, Vano withdrew his motion, his attorney explaining that "[m]y client, I suspect, is going to testify. . . . But the way we look at it, the statements that he gave are all exculpatory, and we want to make sure that it all gets in, Judge. So we're going to withdraw that one." Consistent with this position, at trial, Vano stipulated to the admission of State's Exhibit 24.

9

A defendant "may not invite an error and then complain of the error on appeal." *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021). But that is precisely what Vano does here. While "the invited error rule cannot be used as a pretext for the violation of a defendant's constitutional rights where there is no justification for so doing," here, we find justification for applying the invited error rule—Vano asked the court to admit this evidence because he believed it was exculpatory. *State v. Gadelkarim*, 256 Kan. 671, 685, 887 P.2d 88 (1994). We thus find no error.

But even if Vano could complain about admission of this video, his Fifth Amendment claim is meritless. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1966), protects an individual's right again self-incrimination. "*Miranda* safeguards apply whenever a suspect in custody is subject to either express questioning or its functional equivalent. A suspect's voluntary and unwarned statement while in custody that is not the result of express questioning or its functional equivalent is not excluded from evidence under *Miranda*." *State v. Dudley*, 264 Kan. 640, Syl. ¶ 1, 957 P.2d 445 (1998). Our review of the video shows that Vano, when sitting at a booking desk of an office employee, spontaneously described events. His statements neither followed any questioning nor did the events constitute the functional equivalent of express questioning. See 264 Kan. at 644. Thus *Miranda* warnings were not required.

Vano's claim of a Sixth Amendment violation based on that same video is similarly meritless. "The Sixth Amendment right to counsel attaches on the filing of formal charges or following arraignment when a person is arrested pursuant to a warrant." *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). But that video was made right after Vano had been taken from the scene of the crime to the booking facility. When Vano volunteered his statements he was neither charged nor arrested under a warrant. As a result, Vano's Sixth Amendment right to counsel had not yet attached.

Vano makes related arguments, for example, that his attorney was misled which undermined due process, and that Sergeant Miller's "testimony imperiously refutes (point #10 of) detective Wedel's charging affidavit." But as the party asserting error, Vano has the burden to designate a record which shows prejudicial error in the trial court and without doing so, this court assumes no error. *State v. Goodson*, 281 Kan. 913, 919, 135 P.3d 1116 (2006). Vano has failed to designate such a record for these arguments. Instead, he incidentally raises them in his brief without developing them. We thus consider them waived or abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

*Did Sufficient Evidence Support Vano's Convictions?*

In his second, fourth, and seventh pro se issues, Vano argues that insufficient evidence supports his aggravated assault and aggravated battery convictions.

*Standard of Review*

When we review sufficiency of the evidence in a criminal case, the movant bears a challenging burden. "This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *Meggerson*, 312 Kan. at 247.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder on the fact in issue. To be sufficient,

11

circumstantial evidence need not exclude every other reasonable conclusion. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). In fact, a conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020).

### A. *Aggravated Assault Conviction*

Vano argues that the jury could determine that Roberts was in fear only by improperly stacking inference upon inference. See *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017) (holding circumstances used to infer guilt must be proved and cannot be inferred or presumed from other circumstances). He claims that because Roberts admitted that he had no memory of the event, the State could not prove Roberts was ever in fear, as is required for an aggravated assault conviction. See K.S.A. 2017 Supp. 21-5412(a), (b)(1) (listing an element of aggravated assault, that State had to prove beyond a reasonable doubt, that the defendant knowingly placed the victim in reasonable apprehension of immediate bodily harm).

But Vano cites no case that requires a victim to testify to fear of immediate bodily harm to support a conviction of aggravated assault. See *State v. Tague*, 296 Kan. 993, Syl. ¶ 3, 298 P.3d 273 (2013) ("A failure to support an argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned."). Roberts was unable to so testify here, as he has no memory of the events from the night he was shot. But direct evidence is not required.

Contrary to Vano's assertions, the jury had a right to make reasonable inferences from the facts presented at trial.

"In reviewing the sufficiency of the evidence, an appellate court's function is not to determine the most compelling inference to be drawn from the evidence. . . . [A] factfinder is permitted to reasonably infer the existence of a material fact from circumstantial evidence, even though the evidence does not exclude every other reasonable conclusion or inference." *State v. Scaife*, 286 Kan. 614, Syl. ¶ 3, 186 P.3d 755 (2008).

The jury was advised, "[i]t is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

Circumstantial evidence supports the inference of Roberts' fear. Evidence showed that Roberts was standing in the driveway of Vano's parents' home, that Vano drove up, jumped out of his car, and pulled a firearm on Roberts, and that Roberts' immediate response was to run away. These facts were established by Vano's descriptions of the events while they were happening (the 911 call) and immediately after (through body cam audio recordings and booking facility video). A jury could reasonably infer from Vano's acts of jumping out of his car, yelling, and brandishing a firearm, and from Roberts' swift response of running away, that Vano had placed Roberts in reasonable apprehension of immediate bodily harm. These multiple pieces of circumstantial evidence separately support the single inference of fear. See *State v. Banks*, 306 Kan. at 859. No impermissible inference stacking occurred. Thus sufficient evidence supports Vano's aggravated assault conviction.

B.  *Aggravated Assault/Citizen's Arrest*

Vano next addresses K.S.A. 2017 Supp. 21-5221, which defines and limits use of force. We presume, as does the State, that Vano here claims that because he was carrying out a lawful arrest, he cannot be convicted of aggravated assault (the threat of harm used to carry out the arrest).

13

At trial, Vano argued that he perceived both a trespass and a car burglary occurring, so he was justified in pulling a firearm on Roberts and chasing him to effect a citizen's arrest. Consistent with that theory of defense, the district court instructed the jury on Defendant's right to make a citizen's arrest. See K.S.A. 22-2403(2) (permitting a person who is not a law enforcement officer to arrest another person when criminal trespass has been or is being committed by the arrested person in the view of the person making the arrest). Jury instruction No. 15 stated that, in certain circumstances, Vano had the right to make a citizen's arrest. Jury instruction No. 16 advised on the right to use force to effect an arrest. And jury instruction No. 17 defined the terms "use of force" and "use of deadly force."

But nothing in the facts or law compelled the jury to find Vano not guilty of aggravated assault merely because Vano raised the defense of citizen's arrest. Rather, the jury could consider the evidence in light of these and other jury instructions to make its decision. And the evidence justified the jury's rejection of that defense.

To be guilty of criminal trespass: (1) Roberts must have known that he was in a place in which he was not authorized or privileged to be, and (2) either received an order not to enter or to leave from the owner, or there was a sign, a barrier (like an area being locked up), or a restraining order must have prevented him from being there. See K.S.A. 21-5808 (defining criminal trespassing). Yet no evidence showed any order from the owner not to enter or to leave, or that any "no trespassing" signs were posted, that the area was enclosed or locked in, that a restraining order was in place, or that any similar requirements of the statute were met. See K.S.A. 21-5808. In short, the jury could have properly found that Roberts was *not* committing a criminal trespass when Vano pulled the firearm on him and chased him. Thus its rejection of Vano's citizen's arrest defense stands.

The same is true for Vano's defense that he was carrying out a citizen's arrest because Roberts was attempting a burglary of the vehicles. K.S.A. 22-2403(2). The sole evidence in support of Vano's assertion that he thought Roberts was trying to burglarize a vehicle is that Vano saw Roberts looking into the window of a vehicle parked in his parents' driveway. Vano argues that this is enough. And in some circumstances, looking into a window may be enough to be an overt act proving the crime of attempted burglary. See *State v. Larsen*, No. 122,660, 2022 WL 3017317, at *7 (Kan. App. 2022) (unpublished opinion) (so finding when defendant was staring through window of a home in fenced backyard of victim's house, a location having high expectation of privacy). Yet such results are highly fact-specific. Roberts was in a public area (the driveway) and was looking into an area that had no privacy expectations (contents visible through windows of vehicle). See *State v. Moretz*, 214 Kan. 370, 371-72, 520 P.2d 1260 (1974) (applying longstanding Fourth Amendment rule that officers can look inside windows of vehicles and seize contraband without a warrant under plain view doctrine).

As with trespassing, it was within the jury's province to determine whether Roberts was committing the crime of burglary in the Vano driveway. We cannot disturb the jury's decision on this matter. Sufficient evidence supports the jury's conclusion that Vano was not carrying out a proper citizen's arrest.

C.    *Aggravated Battery Conviction*

In his seventh issue, Vano argues insufficient evidence proves the required "reckless" mental state for his aggravated battery conviction. The State counters that sufficient evidence shows Vano's handling of a firearm was reckless.

At trial, the district court instructed the jury that one of the elements of aggravated battery was that the defendant recklessly caused great bodily harm to, or disfigurement of

15

Roberts. See K.S.A. 2017 Supp. 21-5413(b)(2)(A) (defining aggravated battery). The district court also instructed the jury on the definition of "recklessly":

> "A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist or a result of the defendant's actions will follow.
> "This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

See K.S.A. 2017 Supp. 21-5202(j) (defining culpable mental state of "reckless"); PIK Crim. 4th 52.010 (2021 Supp.).

Vano alleges insufficient facts show recklessness. But by his own contemporaneous statements during and after the incident, Vano revealed that while Vano was holding Roberts at gunpoint, Roberts tried to flee. With his phone in one hand and his loaded firearm in the other, Vano chose to grab Roberts with his hand that held his loaded firearm to keep Roberts from running away. Vano could have dropped the phone and grabbed Roberts with that hand. Or he could have dropped the firearm and grabbed Roberts with that hand. Or he could have kept the firearm in one hand and the phone in the other and let Roberts flee, giving chase again. But as a result of Vano's decision to grab Roberts with the same hand that held his loaded firearm, he aimed the firearm directly at Roberts' head and pulled the trigger while trying to grab Roberts. Even crediting Vano's statement that the shooting was accidental, the jury could properly consider that act to be reckless. Viewed in the light most favorable to the State, the evidence sufficiently shows that Vano's acts were reckless because they consciously disregarded a substantial and unjustifiable risk that Roberts would be shot.

16

*Did the District Court Erroneously Instruct the Jury?*

Finally, in Vano's third, fifth, and sixth issues on appeal he makes various arguments that the district court improperly instructed the jury.

*Standard of Review*

When analyzing these jury instruction issues, we follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, in other words, whether the error can be considered harmless. *State v. Holley*, 313 Kan. at 253. See K.S.A. 2021 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, we consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, we must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects our reversibility inquiry at the third step. 313 Kan. at 254. When a party fails to object to a jury instruction before the district court, we review the instruction to determine whether it was clearly erroneous. K.S.A. 2021 Supp. 22-3414(3). If the challenging party preserved the issue

below, we apply one of two harmless error tests. If the instructional error impacts a constitutional right, we use the federal constitutional harmless error standard: whether there was no reasonable possibility that the error contributed to the verdict. When no constitutional right is impacted, we assess whether there is no reasonable probability the error affected the trial's outcome in light of the entire record. *Holley*, 313 Kan. at 256-57.

A.      *Trespass Instruction*

Vano argues the trespassing jury instruction was clearly erroneous because it confused the jury by erroneously using "defendant" rather than "victim," "Roberts," or some other moniker for Roberts. The State agrees that the jury instruction was flawed in this way, but it maintains that the instruction was not clearly erroneous.

The trespassing instruction stated:

"Jury Instruction No. 18

"The elements of criminal trespass are as follows:

"1. The defendant entered or remained upon a driveway or yard.

"2. The defendant knew he was not authorized to do so.

"3. The property was locked, fenced, enclosed, shut, or secured against passage or entry.

"OR

"3. There was a sign informing persons not to enter the property, which sign was placed in a manner reasonably to be seen.

"OR

"3. The defendant was told not to enter or to leave the property by the owner or other authorized person.

"OR

"3. The defendant had been personally served with a restraining order prohibiting defendant from entering into or remaining on the property.

"4. This act occurred on or about the 15th day of May in Johnson County, Kansas.

"Criminal trespass is not a felony offense."

The parties agree that the references to "the defendant" should have been to "Roberts" and not to defendant.

Vano objected to the trespass instruction, but only to its last sentence—that the crime is not a felony. Because he did not object to the instruction's use of the word "defendant" rather than "Roberts," we apply the clearly erroneous standard. See K.S.A. 2021 Supp. 22-3414(3). So Vano must show that the error was clearly erroneous. For an error to be clearly erroneous, this panel must be "firmly convinced the jury would have reached a different verdict had the instruction been given. The defendant maintains the burden to establish the degree of prejudice necessary for reversal." *State v. Littlejohn*, 298 Kan. 632, Syl. ¶ 2, 316 P.3d 136 (2014).

Vano fails to do so here. The evidence made clear that it was Roberts, not the defendant, who allegedly trespassed by entering the driveway. References were repeatedly made during trial to Roberts' alleged trespass:

- In Jury instructions 15, 16, and 17;
- During opening statements, when defense argued that Vano was exercising his right to make a citizen's arrest and that Roberts ran, not because of the firearm, but, "because he was not supposed to be where he was";
- During trial testimony suggesting that Vano believed Roberts was trespassing; and
- During closing arguments when defense emphasized that Vano was making a citizen's arrest, that Roberts was scaring people, that Vano had

19

seized Roberts because he was trespassing, and that Vano did not know Roberts was not a burglar.

Consistently, no evidence suggested that Vano was trespassing. Rather, it was undisputed that Vano first confronted Roberts on the property of Vano's parents. And the district court explained to the jury that although jury instruction No. 18 used the word defendant, it was referring to the fact that Vano thought Roberts was trespassing. The judge told the jury: "So instead when it says 'the defendant,' it means Addison Roberts. I'm going to leave the instruction as it is, but that's what was intended by that instruction."

Having reviewed all the testimony and argument in context, we find that even though jury instruction 18 erroneously referred to "the defendant," the jury could not have been confused on the defense theory that Roberts was trespassing on Vano's parents' land. Nor was there any confusion at trial that Vano's theory was that he was effectuating a citizen's arrest. Because of the clarity of the record and the context, we are not "firmly convinced the jury would have reached a different verdict had the instruction been given [correctly]." *Littlejohn*, 298 Kan. 632, Syl. ¶ 2.

### B. *"Concurrence" Instruction*

Vano next argues that "it was clear error to not give a concurrence instruction." He asserts:

> "The three essential material elements for establishing 'Corpus Delecti' (The Body of a Crime) are: 'Mens Rea' (Culpable Mind), 'Actus Reus' (Voluntary Act), and the causation of injury. See '1 LaFave, - Substantive Criminal Law,' §§ 6.3(A). The law requires all three elements must exist contemporaneously to be considered a crime."

20

Yet Vano makes no argument on this issue and does not specify what instruction he thinks should have been given. This issue is not properly briefed, and we find it waived or abandoned. See *State v. Logsdon*, 304 Kan. 3, 29, 371 P.3d 836 (2016) ("failure to adequately brief an issue results in abandonment or waiver"); see also *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 483, 505 P.3d 775 (2022) ("'Judges are not like pigs, hunting for truffles buried in briefs.'").

C.      *Voluntariness Instruction*

Finally, Vano argues that the district court erred by not giving his requested voluntariness instruction. He argues the jury should have received an instruction on "actus reus" that his crimes had to be committed voluntarily. The State argues that the instruction was not factually appropriate because no evidence shows that Vano was "compelled" by some other person, drug, or mental health issue to commit the crimes. Agreeing with the State, we find the instruction was not factually appropriate.

During the jury instructions conference, Defense counsel asked the court to instruct on K.S.A. 2017 Supp. 21-520l(a), which states, "[a] person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession." Defense counsel argued that Vano's pulling the trigger was an accident and thus not a voluntary act. The district court denied the request, finding that an unintended yet reckless act may still be voluntary.

This instruction was legally appropriate because it was a correct statement of K.S.A. 2017 Supp. 21-5201(a). That statute states that a "person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession."

But the voluntariness instruction is not factually appropriate here. The term "voluntary" in K.S.A. 21-520l(a) has the common meaning of having the intent to engage

21

in the underlying conduct, "not impelled by outside influence." Black's Law Dictionary 1886 (11th Ed. 2019). For example, as the State suggests, if a person were to take defendant's hand and use it to slap a third person, that would not be a voluntary act on the part of the defendant.

As the district court found, Vano voluntarily committed the underlying conduct—grabbing a fleeing victim by the shirt with his hand holding a loaded firearm—while engaging in the required mental state (recklessness) which injured Roberts, thus committing reckless aggravated battery. An instruction on K.S.A. 2017 Supp. 21-5201(a) would have been inappropriate because no evidence suggested that Vano's acts were involuntary. Because there is no evidence that Vano was "compelled" by some other person to commit his crimes of aggravated assault and reckless aggravated battery, or that his acts were otherwise involuntary, the requested instruction was not factually appropriate. Thus the district court did not err in denying Vano's request for such an instruction.

Affirmed.